WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
John E. Westerman, Esq.
Mickee M. Hennessy, Esq. (admitted *pro hac*)

*Co-counsel for Creditors Joseph and Nancy Murphy*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------------X

In re:

STUART SCOTT SNYDER and
DOREEN ANNE SNYDER,

                           Debtors.

---------------------------------------------------------------X

JOSEPH MURPHY and NANCY MURPHY,

                          Plaintiffs,

              -against-

STUART SCOTT SNYDER and
DOREEN ANNE SNYDER,

                         Defendants.

---------------------------------------------------------------x

Chapter 7 (Converted)

Case No.: 15-50553 (JAM)

Adv. Pro. No.:  15-05042 (JAM)

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW
## IN SUPPORT OF SUMMARY JUDGMENT
## PURSUANT RULE 56 OF THE FEDERAL RULES OF
## CIVIL PROCEDURE AND FEDERAL BANKRUPTCY RULE 7056

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .................................................................................................................2

      The Civil Action ...........................................................................................................4

      Bank Records ...............................................................................................................6

      The Bankruptcy Case ...................................................................................................8

JURISDICTION ..................................................................................................................9

ARGUMENT ......................................................................................................................9

      POINT ONE: PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
      DECLARING THAT THE JUDGMENT IS EXCEPTED FROM DISCHARGE
      PURSUANT TO 11 U.S.C. § 523(A)(4) ...............................................................9

          A.     Standard of Review ...................................................................................9

          B.     Exception from Discharge Pursuant to 11 U.S.C. § 523(a)(4) ................10

              -   The Debtors Were Fiduciaries ...........................................................10
              -   Debtors' Defalcation .........................................................................12
              -   Debtors' Embezzlement .....................................................................12

      POINT TWO: PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
      DECLARING THAT THE JUDGMENT IS EXCEPTED FROM DISCHARGE
      PURSUANT TO 11 U.S.C. §523(A)(2)(A).........................................................14

      POINT THREE: PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
      DECLARING THAT THE JUDGMENT IS EXCEPTED FROM DISCHARGE
      PURSUANT TO 11 U.S.C. § 523(A)(6) ............................................................16

CONCLUSION ..................................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:                                                                                                                    **Page**

*Adamo v. Scheller (In re Scheller)* 265 B.R. 39 (Bankr. S.D.N.Y. 2001) ........................10, 11, 12

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323,
      106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)............................................................................9

*Central Hanover Bank & Trust co. v. Herbst,* 93 F.2d 510, 512 (2d Cir. 1937)...........................12

*Citibank (S.D.) N.A. v. Eashai (in re Eashai)*, 87 F.3d 1082 (9th Cir. 1992)..................................14

*Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995)............................10

*Gateway Star, N.V. v. Zumvalt (In re* Zumwalt*)*, 53 B.R. 277, 281 (Bankr. D. Or. 1985)............13

*Grogan v. Garner,* 498 U.S. 279, 285, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991)..........................10

*Husky Intern. Electronics, Inc. v. Ritz.*, 136 S. Ct. 1581 (May 16, 2016) ......................................15

*Indep. Asset Mgmt. LLC v. Zanger*, No. 07 Civ. 6431,
      2008 WL 2477455 at *2 (S.D.N.Y. 2008)........................................................................11

*In re Bevilacqua,* 53 B.R. 331, 333-34 (Bankr. S.D.N.Y 1985)....................................................13

*In re Blankfort,* 217 B.R. 138, 144  (Bankr. S.D.N.Y. 1998) .......................................................16

*In re Graziano*, *35 B.R. at* 594.....................................................................................................13

*In re Hambley*, 329 B.R. 382 (Bankr. E.D.N.Y. 2005)....................................................... 13, 15- 17

*In re Hanif*, 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) ...........................................................10

*In re Kostoglou*, 73 B.R. 596, 599 (Bankr.N.D.Ohio 1987)...........................................................14

*In re Wisell*, 494 B.R. 23 (Bankr. E.D.N.Y. 2011).......................................................................10

*McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000) ...................................................................14

*Meinhard v. Salmon,* 249 N.Y. 458, 463-64, 164 N.E. 545 (1928).........................................11, 12

*Moonan v. Bevilacqua,* 53 B.R. 331, 333-34 (Bankr. S.D.N.Y 1985) .........................................13

*Mullen v. Jones,* 445 BR 677 (N.D. Tex. 2011) ..........................................................................15

*Navistar Financial Corp. v. Stelluti (in re Stelluti),* 94 F.3d 84 (2d Cir. 1996) ...........................16

*Pace v. Perk*, 440 N.Y.S.2d 710, 716 (2d Dep't 1981) .................................................................11

*RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284 (5th Cir. 1995) .......................................................14

*Ruppert v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 48 (Bankr. S.D.N.Y. 1997) ..............16

*Shiboleth v. Yerushalmi (In re Yerushalmi)*, 393 B.R. 288, 294
   (Bankr. E.D.N.Y. 2008) ..............................................................................................9, 10

*Stelluti,* 94 F.3d 84 ......................................................................................................................16

*Stone v. Stone (In re Stone)* 94 B.R. 298 (S.D.N.Y. 1988) ...........................................................11

*Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972-73 (2nd Cir. 1989) ...................11

*Walters v. Sawyer (In re Sawyer),* 130 B.R. 384, 397 (Bankr. E.D.N.Y. 1991).....................11, 14

*Weigend v. Chwat (In re Chwat)*, 203 B.R. 242 (Bankr. E.D. Va. 1996)......................................13

*Zohlman v. Zoldan¸*226 B.R. 767, 772 (S.D.N.Y. 1998) ..............................................................12

**Treatises:**

4 COLLIER ON BANKRUPTCY ¶523.10 [2] p.523-77 ...............................................................13

4 COLLIER ON BANKRUPTCY ¶523.08 [1][a] p. 523-43 ........................................................14

**Statutes**:

11 U.S.C. § 523(a)(2)(A) ..................................................................................1, 8, 14, 15, 17
11 U.S.C. §523(a)(4) .......................................................................................1, 8, 10- 13, 17
11 U.S.C. §523(a)(6)................................................................................................1, 8, 16, 17
11 U.S.C. §727...............................................................................................................10, 14, 16
11 U.S.C. § 1141 ..................................................................................................................10, 14
11 U.S.C. §1228(a)..............................................................................................................10, 14
11 U.S.C. §1228(b)..............................................................................................................10, 14
11 U.S.C. §1328(b)..............................................................................................................10, 14
28 U.S.C. §1334(b) ....................................................................................................................9
28 U.S.C. §157(a) ......................................................................................................................9
28 U.S.C. §157(b)(1) .................................................................................................................9
28 U.S.C. §157(b)(2)(I) .............................................................................................................9

**Rules**:

Fed. R. Civ. P. 56.....................................................................................................................1, 9

Fed. R. Bankr. P. 7056...........................................................................................................1, 9

Plaintiffs Joseph Murphy and Nancy Murphy (together, "<u>Plaintiffs</u>" or the "<u>Murphys</u>"), by their undersigned counsel, in support of their motion ("<u>Motion</u>"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), together with the accompanying Affidavit of Plaintiff Joseph Murphy ("<u>Murphy Aff.</u>"), (b) the accompanying Declaration of Mickee M. Hennessy, Esq. and the exhibits attached thereto ("<u>Hennessy Dec.</u>) and (c) Plaintiffs' Local Rule 56(a)(1) Statement, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Before this Court is the Murphys' Complaint seeking to except from discharge the indebtedness due from Debtors to the Murphys under that certain judgment awarded to the Murphys by the United States District Court for the Eastern District of New York on September 23, 2014 in the amount of $634,778.49 (the "<u>Judgment</u>").   The Murphys Complaint herein asserts three (3) claims for relief, seeking a declaration by this Court that the Judgment is non-dischargeable pursuant to  11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).   *See,* Complaint, ECF Docket No. 1; Hennessy Dec. Ex. 1.   In their Answer, Defendants Stuart Scott Snyder and Doreen Snyder ("<u>Defendants</u>" or "<u>Debtors</u>") raise only one affirmative defense, asserting that Plaintiffs fail to state a claim upon which relief can be granted.   *See* Answer at p. 11, ECF Docket No. 11; Hennessy Dec. Ex 2.

2.      As set forth below, the indisputable material facts and circumstances make clear that the Judgment should be, and is, excepted from discharge, pursuant to 11 U.S.C.§§523(a)(2)(A), (a)(4) and (a)(6).

1

3.      In sum, The Debtors, who were in a position of trust, encouraged the Murphys to transfer the Murphys' life savings, then mortgage the Murphys' home and transfer those proceeds to the Debtors' business under false pretenses and misrepresentations, under the auspices of becoming business partners.  It is indisputable that the Debtors wrongfully used the Murphys' monies for the Debtors' own personal expenses and otherwise spent the Murphys' money in ways other than as represented to the Murphys.  Those monies were never returned or repaid to the Murphys.  Bank account records and cancelled checks show that the Murphys' money was immediately used to pay the <u>Debtors'</u> own personal expenses and other undisclosed and unauthorized expenses, including Defendants' daughter's college tuition, auto and other personal expenses, and that the Murphys' monies were dissipated within two months after transfer to the Debtors' control.

4.      The Murphys have been victimized for <u>years</u> by the Debtors' steady conduct of delay and obfuscation and by frustration of the Murphys' efforts to exercise their legitimate rights to obtain and collect upon the Judgment.  Joseph Murphy's own brother-in-law encouraged the Murphys to put themselves into debt and invest money with him, on false representations that their money would be safe with him, would be used for business purposes and would be returned with interest.  Instead, the Debtors stole the Murphys' money and used it for themselves.

## **BACKGROUND**[1]

5.      Joseph Murphy is a retired Captain for the New York City Fire Department after twenty years of service.  *Murphy Aff.* ¶2; Complaint, ¶¶ 2, 18; Answer,¶ 18.[2]  Joseph Murphy retired

---

[1]      Reference is made to Plaintiff's Local Rule 56(a)(1) Statement filed contemporaneously with this Motion and which is incorporated herein by reference.  Plaintiffs' submit that the following facts are undisputed or undisputable facts.  Where applicable, citations to supporting documents, pleadings and/or affidavits are supplied.

[2]      Where "Answer" is indicated, Defendants responded in their Answer to the referenced statement as "Admitted."   Copies of the Complaint and Answer are annexed to the accompanying Declaration of Mickee M. Hennessy, Esq. as Exhibits 1 and 2, respectively.

2

from the Fire Department in 2005.  Complaint ¶18.  Before that, Joseph was a New York City Police Officer.  *Murphy Aff.* ¶2; Complaint ¶18; Answer, ¶18.

6.     Defendants, Stuart and Doreen Snyder, are Joseph's brother-in-law and sister, respectively.  *Murphy Aff.,* ¶3; Complaint, ¶3; Answer, ¶3.

7.     Defendant Stuart Snyder has worked in the custom home building business for more than twenty years, performing home construction, luxury home renovation and commercial projections.  Complaint, ¶20; Answer ¶20. Defendant Stuart Snyder operates his business through several entities and conducts business under various trade names (collectively, the "Companies").  Complaint, ¶21; Answer, ¶21.³  One such business was BBSea Associates, LLC ("BBSea"), which was wholly owned by Defendant Stuart Scott Snyder at all relevant times.  *Murphy Aff.* ¶4; Complaint, ¶22; Answer, ¶22.

8.     In or around 2005, Defendant Stuart Snyder told Joseph about a then current project involving the building of two luxury houses, one at 121 Pleasant Street and one at 131 Beacon Street.  *Murphy Aff.*, ¶6.  Complaint, ¶28; Answer, ¶28.  This was of interest to Plaintiffs because, in light of his recent retirement, Joseph Murphy was concerned about whether he had saved enough money for his children's college and for retirement.  *Murphy Aff.*, ¶6.

9.     Defendant Stuart Snyder discussed with Plaintiff Joseph Murphy his investing with Defendant in a project located in Connecticut.  *Murphy Aff.*, ¶7; Complaint ¶36; Answer ¶36.  Plaintiffs understood that to be for investment in, among other things, the purchase of real property located in Bible Street in Greenwich, Connecticut (the "Bible Street Property").  *Murphy Aff.*, ¶7.  Defendants have admitted that Stuart Snyder and Joseph Murphy visited the Bible Street Property and discussed development ideas.  Answer, ¶39.

---

³     Defendant Doreen Snyder has also worked with Stuart Snyder in connection with the business.  Answer, ¶27.

3

10.     In reliance on Defendant's representations, Plaintiffs wire transferred (i) $100,000.00 on or about December 28, 2005, Complaint ¶32, Answer ¶32, and (ii) Plaintiff's wire transferred $275,000.00 on or about August 28, 2006 to a Patriot National Bank account in the name of BBSea. Complaint ¶42, Answer ¶42.  This latter transfer was supposed to be used towards purchase of the Bible Street Property. *Murphy Aff.* ¶8.

11.     The initial $100,000.00 transfer from Plaintiffs consisted of substantially all of the inheritance that Plaintiff Nancy Murphy received when her mother had passed away in the 1990s. *Murphy Aff.* ¶10.  The $275,000.00 transfer was substantially all of the proceeds of a mortgage that Plaintiff's took out on their home, which was otherwise unencumbered by any mortgage at the time. *Murphy Aff.* ¶10.

12.     Neither BBSea nor the Defendants returned any of Plaintiffs' monies.  Complaint, ¶59; Answer ¶12.

**The Civil Action**

13.     Once the monies were transferred to the Debtors' control as directed, Joseph Murphy's inquiries regarding the investment were ignored by his sister and brother-in-law; the Debtors strung the Murphys along with delay and excuses for years with no return of any of the Murphys' money.  *Murphy Aff.*  ¶11.  After about five (5) years of delays and false promises, in 2010, the Murphys were forced to commence a civil action against, *inter alia,* Defendants Stuart Snyder and Doreen Snyder in the United States District Court for the Eastern District of New York, titled *Joseph J. Murphy and Nancy Murphy v. Stuart Snyder, Doreen Snyder, BBSea Associates, LLC, S&D Developers Limited Liability Company, S&D Development, Inc., 42 Everett LLC, 40 Bogert Rd LLC, and S&D Contracting, Inc.,* 10 Civ. 01513 (JS)(AKT) (the "Civil Action"), for

4

breach of contract, breach of fiduciary duty and other similar claims. *See* Civil Action Amended

Complaint, Hennessy Dec. at Ex. 3; Complaint, ¶5; Answer, ¶5.[4]

14.    On August 15, 2014, Magistrate Judge Tomlinson entered a Report and

Recommendation, recommending that Defendants' answers be stricken and that the Murphys be

awarded default judgment against, among others, Defendants herein (the "Tomlinson Report,").

Hennessy Dec. Ex. 4.

15.    Although the Tomlinson Report did not recommend entry of a default judgment as to

causes of action that appeared duplicative of the Murphys' breach of contract claim in the Civil

Action, Magistrate Tomlinson found that default judgment was warranted for breach of contract and

breach of fiduciary duty. *Tomlinson Report,* Hennessy Dec. Exhibit 4, at p. 30. "Here, Plaintiffs

entered into the Haworth Project investment contracts as "silent partners" and as the sole partner

with Defendants in the Connecticut Project. Therefore, the Defendants were required to act in

Plaintiffs' best interest with regard to their business ventures. By refusing to allow Plaintiffs to

actively participate in the projects in which a total of $375,000 was invested, and by refusing to

account for their finances, Defendants breached their fiduciary duty to Plaintiffs and caused them to

suffer monetary damages of $375,000." *Id.*, at p. 25.[5]

16.    On September 22, 2014, the District Court Judge Joanna Seybert entered an order

Adopting the Tomlinson Report and on September 22, 2014, Judgment was entered against the

Defendants, including the Debtors. Hennessy Dec. Exhibit 5.

---

[4]    Plaintiffs' excruciating journey of litigation of the Civil Action over four (4) years is set forth in Plaintiffs' Submission, filed at the request of this Court on February 25, 2016, (ECF Adversary Docket No. 15, which Submission and the Exhibits thereto are incorporated here by reference.

[5]    The Tomlinson Report also found that Defendants were fiduciaries based on their relationship with Plaintiffs: "Plaintiffs have sufficiently set forth that a fiduciary relationship existed between Plaintiff, Joseph Murphy and his Defendant brother-in-law Stuart Snyder and that they had a 'close relationship' with each other and 'enjoyed a relationship of trust.'" Hennessy Dec. Ex. 4, at p. 25. Defendants have admitted in their Answer to the Murphys' Adversary Proceeding Complaint that the Murphys and the Debtors previously had a very close relationship as well. *See* Complaint at ¶19, Answer at 19.

17.     On or about November 18, 2014, the Judgment was registered with the United States District Court for the District of Connecticut, resulting in a lien against the Debtors' residence. Hennessy Dec. Exhibit 6.

**Bank Records**

18.     In connection with the Civil Action, on or about June 10, 2013, Plaintiffs issued a Subpoena to Patriot National Bank, seeking information and statements concerning the account held by BBSea, where Plaintiffs had wired certain of its monies (the "Patriot Subpoena").  *Murphy Aff.,* ¶16; Hennessy Dec.  ¶8 and Ex. 7.  In response to the Patriot Subpoena, Plaintiffs received, among other things, copies of bank statements from Patriot Bank for the period August 2006 through November 2006.  *Murphy Aff.,* ¶17; Hennessy Dec. ¶9 and Ex. 8.  Plaintiffs also received copies of checks drawn on the BBSea account during this period.  *Murphy Aff.*, ¶17; Hennessy Dec. ¶10 and Ex.9.

19.     The bank records and checks produced Patriot Bank reveal the following:

- At the time Plaintiffs transferred $275,000.00 into the account on August 28, 2006, there was only $804.86 in the BBSea account.  Hennessy Dec. Ex. 8 at (Murphy 460);[6]

- There were no additional deposits made into the account after Plaintiffs' deposit until October 17, 2006.  *Id.*, Ex. 8 at (Murphy 460-66);

- As of October 16, 2006, there remained only $3,875.81 in the account.  Hennessy Dec. Ex. 8 at (Murphy 465);

- During the period between Plaintiffs' August 28 deposit and October 17, 2006 (the "Period"), Plaintiffs monies were used for various unauthorized transfers and expenses, including Defendants personal expenses, and not for the purposes represented to

---

[6]     The reference to "Murphy___" is to the bates page number at the bottom of the identified exhibit and constitutes the page number.

Plaintiffs.  Hennessy Dec. Ex. 8; *Murphy Aff.* ¶19.  Thus, the very next day after Plaintiffs' transfer, on August 29, $54,000.00 was wired out of the BBSea account, which Defendant Joseph Murphy understands was to pay his niece, Brittany Snyder's college tuition at George Washington University.  Hennessy Dec. Ex. 8 at (Murphy 460);  *Murphy Aff.* ¶19.

- Other transfers in connection with the George Washington University trip include: a transfer of $783.90 on September 5, 2006 to the "G.W. Bookstore Washington DC"; and a $295.48 transfer on September 5, 2006 for what appears to be a restaurant tab in Washington DC.  Hennessy Dec. Ex. 8 at (Murphy 462).

- There were several checks payable to "Cash" drawn on the account during this period, including: on (a) September 8, 2006 for $3,000.00, Hennessy Dec. Ex. 9 at (Murphy 2244); (b) September 21, 2006 for $2,200.00, *Id.,* Ex. 9 at (Murphy 2249); (c) September 21, 2006 for $2,000.00, *Id.,* Ex. 9 at (Murphy 2248); (d) October 6, 2006 for $2,100.00, *Id.*, Ex. 9 at (Murphy 2259); and (e) October 19, 2006 for $2,000.00.  *Id.,* Ex. 9 at (Murphy 2257).

- Checks were drawn for personal car repairs aggregating approximately $5,000.00 during this period; Hennessy Dec. Ex. 9 at (Murphy 2253, 2255-56).

- Several thousands of dollars in checks were drawn from the account to pay credit card debt.  For example, a check was made payable to "Citicards" in the amount of $31,588.32 on August 31, 2006, Hennessy Dec. Ex. 9 at (Murphy 2229).  A check was made payable to "MBNA" in the amount of $8,263.92 on September 6, 2006.  Hennessy Dec. Ex. 9 at (Murphy 2237).  A check was made payable to "Citicards" in the amount of $10,000.00 on October 10, 2006.  Hennessy Dec. Ex. 9 at (Murphy 2251).

- checks were made payable to "Star Island Yacht Club" during the period between August 28 and October 16 – one dated September 6, 2006 in the amount of $2,790.00 and one dated October 10, 2006 in the amount of $3,454.95.  Hennessy Dec. Ex. 9 at (Murphy 2239, 2261).

- a check was made payable to Defendant Stuart Snyder himself of $1,800 on September 14, 2016; Hennessy Dec. Ex. 9 at (Murphy 2245).

20.     In short, the Plaintiffs' August 28 transfer was used for various expenses at Defendants' sole discretion, including clearly personal expenses, but never for the purchase of property on Bible Street as represented by Defendants to Plaintiffs, which induced the transfer in the first place.  *Murphy Aff. ¶22*; Complaint, ¶45.

21.     On October 27, 2014, the Superior Court for the State of Connecticut entered a judgment by strict foreclosure with a law day of April 28, 2015 in connection with a mortgage foreclosure proceeding commenced on or about May 31, 2013 by Farmington Bank against the Debtors in the Superior Court for the State of Connecticut at Stamford, titled *Farmington Bank v. Stuart Snyder et al.,* Docket No. FST-CV13-6018602-S (the "Foreclosure Action"), to foreclose a mortgage on property owned by the Debtors and located at 33 Barton Lane, Greenwich, Connecticut (the "Property").  Hennessy Dec. ¶11 and Exhibit 10.

**The Bankruptcy Case**

22.     A foreclosure sale of the Property was scheduled to take place on or about April 28, 2015.  Hennessy Dec. Ex. 10.  On April 23, 2015 (the "Petition Date"), the Debtors filed their voluntary Chapter 11 bankruptcy petition.

23.     On July 27, 2015, Plaintiffs commenced this adversary proceeding seeking a declaration that the debt memorialized by the Judgment is excepted from discharge pursuant to 11

8

U.S.C. §§523(a)(2)(A), (4) and (6). ECF Adversary Docket No. 1; Hennessy Dec. Ex. 1.   On

December 11, 2015, Defendants filed their Answer to the Complaint.   ECF Adversary Docket

No.11; Hennessy Dec. Ex. 2.

24.     On June 2, 2016, Defendants' case was converted to Chapter 7.   ECF Main Case

Docket No. 158.

## JURISDICTION

25.     This Court has jurisdiction to hear and resolve this dispute pursuant to 28 U.S.C.

§1334(b) and 28 U.S.C. §§ 157(a), 157(b)(1) and 157(b)(2)(I) and the Connecticut District Court

Standing Order of Reference dated September 21, 1984.   "It is well established that the bankruptcy

court retains the exclusive jurisdiction to determine the ultimate question of the dischargeability of

the debt under federal bankruptcy law." *Shiboleth v. Yerushalmi (In re Yerushalmi)*, 393 B.R. 288,

294 (Bankr. E.D.N.Y. 2008).

## ARGUMENT

## POINT ONE

**PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DECLARING THAT THE
JUDGMENT IS EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. §523(A)(4).**

### A. Standard of Review

26.     A motion for summary judgment shall be granted "if the movant shows that there is

no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.   While the moving party bears the initial burden of

showing that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323,

106 S. Ct. 2548, 91 L.Ed.2d 265 (1986), the burden then shifts to the non-moving party.   "Once the

movant meets this burden, the non-movant 'must do more than simply show that there is some

metaphysical doubt as to the material facts.   If the record taken in its entirety could not convince a

rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted.'" *In re Hanif*, 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) (granting plaintiffs motion for summary judgment for nondischargeability of debt), *quoting Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995).

27.     To prevail on a complaint to except debt from discharge, a creditor must demonstrate the elements of dischargeability by a preponderance of evidence. *Adamo v. Scheller (In re Scheller)* 265 B.R. 39 (Bankr. S.D.N.Y. 2001) (excepting from discharge the indebtedness of debtor-partner), *citing Grogan v. Garner,* 498 U.S. 279, 285, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991).

**B.   Exception from Discharge Pursuant to 11 U.S.C. §523(a)(4).**

28.     In their Second Claim for Relief, Plaintiffs assert that the Judgment is not dischargeable under 11 U.S.C. §523(a)(4).  Hennessy Dec. Ex. 1, Complaint at ¶¶ 74-78.  Section 523(a)(4) provides, in pertinent part as follows:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;" 11 U.S.C. §523(a)(4).

***The Debtors Were Fiduciaries***

29.     The Tomlinson Report, adopted by the District Court, specifically found, among other findings, that Plaintiffs had entered into two "investment agreements" with the Debtors, that the parties entered into the agreements as "partners" and, that the Debtors breached their fiduciary duties to Plaintiffs. *Tomlinson Report,* Hennessy Dec. Ex. 4, at pp. 24-25.

30.     While a determination of whether a debtor is acting in a fiduciary capacity is a matter of federal law, bankruptcy courts will look to state law to determine whether a fiduciary relationship

exists.  *In re Yerushalmi*, 393 B.R. 288, 295 (Bankr. E.D.N.Y. 2008).  *See also, In re Wisell*, 494

B.R. 23 (Bankr. E.D.N.Y. 2011) (granting judgment creditor's motion for summary judgment based

on preclusive effect of state court's judgment).

31.     The Tomlinson Report cited several cases for the proposition that partners and joint

venturers are bound by a fiduciary duty to act in each other's best interests.  *Tomlinson Report*,

Hennessy Dec. Ex. 4 at p. 24, *citing Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969,

972-73 (2nd Cir. 1989)(discussing fiduciary duty of partners under New York law); *Pace v. Perk*,

440 N.Y.S.2d 710, 716 (2d Dep't 1981) ("[Partners] owe a duty of exercising the utmost good faith,

fairness and loyalty to their copartners."); *Indep. Asset Mgmt. LLC v. Zanger*, No. 07 Civ. 6431,

2008 WL 2477455 at *2 (S.D.N.Y. 2008) ("As a matter of New York law, joint venturers owe each

other a fiduciary duty").

32.     The foregoing findings in the Tomlinson Report equally support the determination

that Defendants were fiduciaries as that term is used in Section 523(a)(4) of the Bankruptcy Code.

*Walters v. Sawyer (In re Sawyer),* 130 B.R. 384, 397 (Bankr. E.D.N.Y. 1991) ("In this Circuit, that

a partner is a fiduciary in New York for purposes of 523(a)(4) is now settled law."); *Stone v. Stone

(In re Stone)* 94 B.R. 298 (S.D.N.Y. 1988) (affirming denial of dischargeability of indebtedness due

to former partner, holding that partners are fiduciaries for purposes of section 523(a)(4))*; Scheller,*

265 B.R. 39, 52 (same).

33.     "In this Circuit, state courts have elevated the duties of partners to accord with the

words of Chief Judge Benjamin Cardozo in *Meinhard v. Salmon*, in holding that partners 'owe to

one another, while the enterprise continues, the duty of the finest loyalty.'" *Scheller,* 265 B.R. at 52,

*quoting Meinhard v. Salmon,* 249 N.Y. 458, 463-64, 164 N.E. 545 (1928).  Many forms of conduct

permissible in a workaday world for those acting at arm's length, are forbidden to those bound by

11

fiduciary ties.  "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."  *Meinhard v. Salmon,* 249 N.Y. at 463-64.

### *Debtors' Defalcation*

34.    Section 523(a)(4) excepts from discharge debts that derive from, among other things, defalcation by a fiduciary.  "While something more than mere negligence by a fiduciary is required, a defalcation need not rise to the level of fraud, embezzlement or misappropriation.  *Central Hanover Bank & Trust co. v. Herbst,* 93 F.2d 510, 512 (2d Cir. 1937).  "[D]efalcation is "willful neglect," essentially a standard of recklessness or at least gross negligence." *Scheller,* 265 B.R. 39, 53, *citing Zohlman v. Zoldan,* 226 B.R. 767, 777 (S.D.N.Y. 1998).

35.    Here, there are ample undisputable facts and circumstances to warrant a determination by this Court that the Debtors' behavior rises, at a minimum, to the level of conscious misbehavior and/or extreme recklessness.  As set forth in the Murphy Affidavit and the Complaint, Plaintiffs were induced to invest with Debtors in part by Debtors' representations that the money would be used to purchase real property on Bible Street.  *Murphy Aff.*  ¶¶7-9; Complaint ¶¶39-41. The bank statements evidence that, immediately after the Murphys' transfer of monies to the Debtors' control, the Debtors began utilizing the monies for personal expenses and other expenses - - *but never to purchase real property*.  The bank records also show that substantially all of the $275,000.00 transferred by Plaintiffs on August 28, 2006 was *gone* by October 16, 2006.  *See* Hennessy Dec. Ex. 8.

### *Debtors' Embezzlement*

36.    "Section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was

entrusted to the debtor's care, and therefore was an embezzlement." *Scheller* 265 B.R. 39, 53, *citing* 4 COLLIER ON BANKRUPTCY ¶523.10 [2] at 523-77.  It is also well established that intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented.  *In re Hambley*, 329 B.R. 382 (Bankr. E.D.N.Y. 2005).

37.    The undisputable facts here also evidence embezzlement by the Debtors. Embezzlement involves (1) entrustment to the debtor of (2) property (3) of another (4) which the debtor appropriates for his or her own use (5) with the intent to defraud.  *Scheller* 265 B.R. at 53, *citing Moonan v. Bevilacqua* (*In re Bevilacqua*)*,* 53 B.R. 331, 333-34 (Bankr. S.D.N.Y 1985); *In re Graziano*, *35 B.R. at 594*.  "A partner who diverts partnership funds for his or her own use commits embezzlement within the meaning of section 523(a)(4)."  *Gateway Star, N.V. v. Zumvalt (In re Zumwalt)*, 53 B.R. 277, 281 (Bankr. D. Or. 1985); *Weigend v. Chwat (In re Chwat)*, 203 B.R. 242 (Bankr. E.D. Va. 1996).

38.    In sum, the Debtors were fiduciaries of Plaintiffs; they misappropriated Plaintiffs' monies; and they diverted funds for their personal use and other unauthorized use.  Accordingly, the findings contained in the Tomlinson Report, Hennessy Dec, Ex. 4, as adopted by the Federal District Court, Hennessy Dec. Ex. 5 and the undisputable evidence of the spending of the Plaintiffs' money by and for the benefit of Debtors as demonstrated by the bank statements and checks, Hennessy Dec. Exs. 8 and 9, amply demonstrate that Plaintiffs are entitled to summary judgment declaring that the Judgment is excepted from discharge pursuant to 11 U.S.C. §523(a)(4), for defalcation while acting in a fiduciary capacity and/or embezzlement.

13

## POINT TWO

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DECLARING THAT THE JUDGMENT IS EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. §523(A)(2)(A).

39.    In their First Claim for Relief, Plaintiffs assert that the Judgment should be excepted from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.  Hennessy Dec. Ex. 1, Complaint at ¶¶ 68-73.  Section 523(a)(2)(A) provides, in pertinent part, as follows:

> A discharges under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> > (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. §523(a)(2)(A).

40.    The purposes of this provision is to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors.  4 COLLIER ON BANKRUPTCY ¶523.08 [1][a], p. 523-43.

41.    For purposes of section 523(a)(2)(A), "actual fraud" means something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.  *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284 (5th Cir. 1995); *Citibank (S.D.) N.A. v. Eashai (in re Eashai)*, 87 F.3d 1082 (9th Cir. 1992); *see also, McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000).

42.    Fraud includes any "deceit, artifice, trick or design ... used to cheat another— something said or done omitted with the design of perpetrating a cheat or deception." *Walters v. Sawyer (In re Sawyer)* 130 B.R. 384, 396 (Bankr. E.D.N.Y. 1991)*, quoting In re Kostoglou*, 73 B.R. 596, 599 (Bankr.N.D.Ohio 1987).  To prove that a debt is nondischargeable as obtained through fraud, a creditor must show (1) that debtor made representations (other than a statement concerning

his financial condition), (2) that at the time debtor made the representations, he knew they were false, (3) that debtor made the representations with the intention and purpose to deceive the creditor, (4) that the creditor justifiably relied on such representations, and (5) that the creditor sustained losses as a proximate result of the false representations. *Mullen v. Jones,* 445 BR 677 (N.D. Tex. 2011) (discharge denied).

43.     The United States Supreme Court has recently held that the term "actual fraud" in Section 523(a)(2)(A) encompasses fraudulent conveyance schemes, even in the absence of evidence of a false representation. *Husky Intern. Electronics, Inc. v. Ritz.*, 136 S. Ct. 1581 (May 16, 2016).

44.     Here, as described above, Plaintiffs were induced by the Debtors to transfer monies to Debtors' control for purposes of business investment, and in particular for the purchase of the Bible Street Property.   Complaint at ¶36; Answer at ¶36. Bank statements and checks show, however, that the Debtors secretly used the funds to pay unauthorized expenses including personal expenses and that the Murphys' money was spent within two months of the transfer.   Hennessy Dec. Exs. 8 and 9.   As such, the findings contained in the Tomlinson Report, Hennessy Dec. Ex. 4, together with the evidence of the transfers of Plaintiffs' monies as reflected in the bank statements and checks, shows sufficiently that the Judgment should also be excepted from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code in this case as well. *In re Hambley*, 329 B.R. 382 (Bankr. E.D.N.Y. 2005).

## POINT THREE

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DECLARING THAT THE JUDGMENT IS EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. §523(A)(6).

45.    In their Third Claim for Relief, Plaintiffs assert that the Judgment is and should be excepted from discharge pursuant to Section 523(a)(6) of the Bankruptcy Code.  Hennessy Dec. Ex. 1, Complaint, ¶¶79-81.  Section 523(a)(6) provides that section 727(a) does not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

46.    "'Malicious'" as interpreted by this Circuit, can be actual or constructive malice. *Navistar Financial Corp. v. Stelluti (in re Stelluti),* 94 F.3d 84 (2d Cir. 1996); *Ruppert v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 48 (Bankr. S.D.N.Y. 1997).  "The term 'malicious' means wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will."  Examples include the withdrawal of money from joint bank accounts in anticipation of divorce.  *Stelluti,* 94 F.3d 84.  Maliciousness will be found where the "debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant denial of discharge."  *In re Hambley*, 329 B.R. 382, 402 (holding that debt was excepted from discharge under Section 523(a)(6)), *quoting*, *In re Blankfort,* 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998).

47.    Here, as described in the Tomlinson Report, the Debtors did breach their duties to Plaintiffs, it having been determined that Debtors were and are liable to Plaintiffs for breach of contract and breach of fiduciary duties.  Hennessy Dec. Ex. 4, pp. 17-19, 24-25.  Moreover, there can be no doubt that (a) the dissipation of the Murphys' monies was utterly inexcusable; and (b) the Debtors' failure to return the money to Plaintiffs has injured Plaintiffs.  *See Murphy Aff.,* ¶23.  This

16

is sufficient to show willful and malicious injury by Defendants to Plaintiffs here. *Accord In re Hambley,* 329 B.R. at 402 ("The defendants had a contractual duty under the [agreement] to return funds . . . defendants' failure to return the money has injured plaintiffs. The Court finds the defendants caused a willful and malicious injury and the debt is excepted from discharge under Section 523(a)(6)."). Accordingly, Plaintiffs are entitled to a determination that the Judgment is excepted from discharge pursuant to Section 523(a)(6) of the Bankruptcy Code.

### CONCLUSION

48.    The Murphys have endured years of litigation because of the conduct of these Debtors, but the undisputable facts in this case are quite simple: the Debtors induced the Murphys to transfer their life savings and mortgage their home, purportedly to become partners in business; the Debtors' instead used the Murphys' monies for their own purposes and never repaid the money; the Debtors breached their contractual and fiduciary duties to the Murphys; they acted willfully and maliciously and, caused the Murphys harm.

49.    For all of the foregoing reasons, the Judgment should, respectfully, be declared excepted from discharge pursuant to 11 U.S.C. §§523(a)(2)(A), (4) and (6).

Dated: Uniondale, New York
August 10, 2016

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP


*/s/ Mickee M. Hennessy*
Mickee M. Hennessy, Esq. (admitted *pro hac*)
John E. Westerman, Esq.
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

*Co-counsel for Creditors Joseph and Nancy Murphy*

01413379.DOCX

17