## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

STUART SCOTT SNYDER and                    In re: Chapter 7
DOREEN ANNE SNYDER,                   Case No. 15-50553 (JAM)

Debtors.
-----------------------------------------------------------------X
JOSEPH MURPHY and NANCY MURPHY,
Plaintiffs,

-against-                              Adv. Pro. No.: 15-05042 (JAM)

STUART SCOTT SNYDER and
DOREEN ANNE SNYDER,
Defendants.
-----------------------------------------------------------------X

### APPEARANCES

Mickee M. Hennessy, Esq.           Attorney for the Plaintiffs
Westerman Ball Ederer Miller
Zucker & Sharstein, LLP
1201 RXR Plaza
Uniondale, New York 11556

Scott M. Charmoy, Esq.           Attorney for the Defendants
Charmoy & Charmoy
1700 Post Road, Suite C-9
P.O. Box 804
Fairfield, Connecticut 06824

### MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
### AND OPPOSITION TO SUMMARY JUDGMENT

## I.    Introduction

In this adversary proceeding, the Plaintiffs, Joseph Murphy and Nancy Murphy

(collectively, the "Plaintiffs"), seek to have a debt owed to them by the Debtors, Stuart Scott

Snyder and Doreen Anne Snyder (collectively, the "Defendants"), deemed nondischargeable

pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6).  The

Plaintiffs have moved for summary judgment on all counts of the adversary complaint in reliance upon all documents submitted to this Court, and upon the allegedly preclusive effect of a prior judgment entered on September 23, 2014, in the United States District Court for the Eastern District of New York.  For the reasons discussed below, the Plaintiffs' motion is **GRANTED** as to Counts Two and Three of the Complaint, and **DENIED** as to Count One of the Complaint.

## II.	Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1).  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.	Bankruptcy Court Proceedings

On April 23, 2015, the Defendants in the instant matter filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  (ECF No. 1).[1]

On July 27, 2015, the Plaintiffs initiated this adversary proceeding (the "Adversary Proceeding"), by filing a three-count complaint in this Court (the "Complaint").  The Complaint seeks a declaration that the Plaintiffs' debt is nondischargeable, in whole or in part, under the provisions of 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and/or (a)(6).  (ECF Adv. No. 1).  On December 11, 2015, the Defendants filed an answer denying the allegations in the Complaint and asserting one affirmative defense.  (ECF Adv. No. 11).  On June 1, 2016, the Defendants' Chapter 11 case was converted to a Chapter 7 proceeding.  (ECF No. 158).

---

[1] All references to documents appearing on the docket of the instant Adversary Proceeding will appear as: ECF Adv. No. _____.  All references to documents appearing on the docket of the main bankruptcy case will appear as: ECF No. _____.

On August 10, 2016, the Plaintiffs filed a motion for summary judgment (the "Motion for Summary Judgment", ECF Adv. No. 21), on all three counts in the Complaint.  On September 14, 2016, the Defendants filed an opposition to the Motion for Summary Judgment (the "Opposition", ECF Adv. No. 26).[2]  On October 25, 2016, the Plaintiffs filed a reply to the Opposition (the "Reply", ECF Adv. No. 34).  On November 1, 2016, oral argument on the Plaintiffs' Motion for Summary Judgment, the Defendants' Opposition, and the Plaintiffs' Reply was held before this Court.

## IV.    District Court Proceedings[3]

In 2010, the Plaintiffs commenced an action against the Defendants and other related entities in the United States District Court for the Eastern District of New York.  The District Court Action is titled *Joseph J. Murphy and Nancy Murphy v. Stuart Snyder, Doreen Snyder, BBSea Associates, LLC, S&D Developers Limited Liability Company, S&D Development, Inc., 42 Everett LLC, 40 Bogert Rd LLC, and S&D Contracting, Inc.*, 10 Civ. 01513 (JS)(AKT) (the "District Court Action").

In the District Court Action, the Plaintiffs asserted claims for: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) fraudulent inducement; (5) money had and received; (6) breach of fiduciary duty; and (7) an accounting.  On November 12, 2010, Attorney Marc A. Greenberg of the Law Offices of David Watkins (the "Watkins firm"), filed an answer to the complaint on behalf of the Defendants.  In the answer, the Defendants responded to the vast

---

[2] Although titled "Reply to Motion for Summary Judgment", the Court will treat the Reply as the Defendants' Objection/Opposition to the Motion for Summary Judgment.
[3] The complete procedural history in the District Court is contained in the August 15, 2014 Report and Recommendation issued by United States Magistrate Judge Kathleen Tomlinson (the "August 2014 Tomlinson Report") on pages 5-11.

majority of the allegations by neither admitting nor denying them.  The Defendants did not assert

any affirmative defenses to the claims raised in the complaint.

On February 25, 2011, the Plaintiffs served the Defendants with interrogatories and

document requests.  The Defendants' responses to the discovery requests were due by April 1,

2011.  The Defendants failed to respond to the discovery requests.  On May 10, 2011, the

Plaintiffs moved to compel responses (the "Motion to Compel").  Although represented by

counsel, the Defendants did not oppose the Motion to Compel.  As a result, United States

Magistrate Judge William Wall granted the Plaintiffs' Motion to Compel on the merits and

because it was unopposed.  The Defendants were ordered to comply with all outstanding

discovery no later than May 27, 2011.   In addition, Magistrate Judge Wall awarded monetary

sanctions in the amount of $200.00, because the Defendants failed to provide any "substantial

justification for their failure to timely respond to the discovery demands."

On June 10, 2011, the Plaintiffs filed a second motion to compel Defendants' responses

to the requests for documents and interrogatories (the "Second Motion to Compel").  On June 29,

2011, Magistrate Judge Wall found the Defendants' responses to be "woefully deficient" and

noted that the "[D]efendants' willful, cavalier attitude towards their discovery obligations and

the Orders of this court [would] not be tolerated." *Murphy v. Snyder*, No. 10 Civ. 1513, 2011

WL 4345088, at *1 (E.D.N.Y. July 28, 2013), adopted by 2011 WL 4441487 (E.D.N.Y. Sept. 15,

2011).  Magistrate Judge Wall then ordered the Defendants to provide "meaningful responses to

the document demands" and interrogatories by July 8, 2011. *Id*.   Additional sanctions were

imposed on the Defendants for "blatantly disregarding prior Orders". *Id*. Magistrate Judge Wall

warned that if the Defendants continued "their obstreperous conduct regarding the discovery

4

responses," the court would not "hesitate to impose additional sanctions, including but not

limited to, a recommendation that their answer be stricken and a default judgment be entered

against them." *Id*. After the Defendants failed to comply with Magistrate Judge Wall's June 29,

2011 Order, the Plaintiffs filed a third motion to compel (the "Third Motion to Compel") on July

15, 2011. The Plaintiffs also filed a motion to strike the Defendants' amended answer (the

"Motion to Strike").

In view of the Defendants' failure to comply with multiple Orders, Magistrate Judge Wall

issued a Report and Recommendation on July 28, 2011, recommending that the Plaintiffs'

Motion to Strike be granted and that default judgment be entered against the Defendants. *See*

*Murphy*, 2011 WL 4345088. On September 15, 2011, United Stated District Court Judge Joanna

Seybert adopted the Report and Recommendation in its entirety and entered a default judgment

against the Defendants. *See Murphy*, 2011 WL 4441487. In addition, District Judge Seybert

directed the Plaintiffs to submit evidence in support of their requested damages to Magistrate

Judge Wall within forty-five days of the Order. *Id.* at *1. On October 4, 2011, the Plaintiffs

filed an "Affidavit in Support of Damages Application".

On November 17, 2011, the District Court Action was reassigned to United States

Magistrate Judge Gary Brown, who calculated the Plaintiffs' damages in accordance with the

affidavit submitted by the Plaintiffs. On March 28, 2012, Magistrate Judge Brown

recommended that the Plaintiffs be awarded: (1) damages in the amount of $120,000.00 and

$330,000.00, respectively, for a total of $450,000.00; (2) pre-judgment interest on the

$120,000.00 award from July 1, 2009, through the date of judgment, and on the $330,000.00

award from June 4, 2010, through the date of judgment; (3) costs in the amount of $350.00; (4)

previously awarded sanctions in the total amount of $2,713.00; (5) post-judgment interest; and

(6) punitive damages in the amount of $37,500.00 to be awarded against Defendant Stuart

Snyder. *See Murphy v. Snyder*, No. 10 Civ. 1513, 2012 WL 4483025, at *6 (E.D.N.Y. Mar. 28,

2012).

On April 25, 2012, Attorney Gabriel Levinson of Ganfer & Shore, LLP, filed a notice of

appearance on behalf of the Defendants in the District Court Action.  The day before, on April

24, 2012, Attorney Levinson filed a motion to vacate the default judgment and an objection to

Judge Brown's Report and Recommendation (the "Brown Report"), alleging abandonment by

the Defendants' previous counsel.

On June 11, 2012, the law firm of Tarter, Krinksy & Drogin LLP, filed a notice of

appearance on behalf of the Defendants and replaced Attorney Levinson.  On September 27,

2012, District Judge Seybert concluded that she would consider the Brown Report as to the

damages awarded after addressing the Motion to Vacate the Default Judgment.

On March 8, 2013, United States Magistrate Judge Kathleen Tomlinson issued a Report

and Recommendation to District Judge Seybert recommending that: (1) the Motion to Vacate the

Default Judgments be granted; (2) the Court set aside as moot the Brown Report; (3) the Motion

to Amend be denied; and (4) the sanctions previously awarded by Magistrate Judge Wall in the

amount of $2,713.00 be enforced as a condition to granting the Motion to Vacate Default

Judgment (the "March 2013 Tomlinson Report").  *See Murphy v. Snyder*, No. 10 Civ. 1513,

2013 WL 934603, at *22 (E.D.N.Y. Mar. 8, 2013), adopted by 2013 WL 1335757 (E.D.N.Y.

Mar. 29, 2013).  On March 29, 2013, District Judge Seybert adopted the March 2013 Tomlinson

Report in its entirety over the Defendants' objection to the award of sanctions. *See Murphy*,

2013 WL 1335757.

On March 21, 2013, the law firm Tarter, Krinsky & Drogin LLP moved to withdraw as

counsel to the Defendants, asserting that the firm had been unable to communicate with their

clients.  On April 9, 2013, District Judge Seybert granted the motion of Tarter, Krinsky & Drogin

LLP to be relieved as the Defendants' counsel.

On June 6, 2013, an Initial Case Management and Scheduling Order was issued pursuant

to which all parties were ordered to serve document requests and interrogatories no later than

June 28, 2013.  On June 28, 2013, the Plaintiffs served a second set of interrogatories and

discovery requests.  However, no responses to the document requests were ever provided by the

Defendants.

In light of the Defendants' continued failure to comply with their discovery obligations

and the Orders of the District Court, a Certificate of Default was issued by the Clerk of the

District Court on October 9, 2013.  On October 31, 2013, the Plaintiffs filed a motion: (1) to

strike the Amended Answer filed by the Defendants; and (2) to have the Court enter a default

judgment against all Defendants pursuant to Fed. R. Civ. P. 37.  District Judge Seybert referred

the matter to Magistrate Judge Tomlinson "to issue a Report & Recommendation… to determine

the appropriate amount of damages, costs, and/or fees, if any, to be awarded".  Magistrate Judge

Tomlinson recommended the following: (1) that the Defendants' Amended Answer be stricken;

(2) that a default judgment be entered against the Defendants; and (2) that the Plaintiffs be

awarded a total of $450,000 in damages, plus interest.  (August 2014 Tomlinson Report at 2).

District Judge Seybert adopted the August 2014 Tomlinson Report in its entirety and on

September 23, 2014, the Plaintiffs obtained a Judgment in the District Court Action against the

Defendants[4], in the amount of $634,778.49, plus interest (the "Judgment"). *See Murphy v.*

*Snyder*, No. 10 Civ. 1513, 2013 WL 934603, at *22 (E.D.N.Y. Mar. 8, 2013), adopted by 2013

WL 1335757 (E.D.N.Y. Mar. 29, 2013).

**V.    The Motion for Summary Judgment Undisputed Facts**

1.    The Plaintiff, Joseph Murphy, is a retired Captain for the New York City Fire

Department after twenty years of service.  (Complaint, ¶¶2, 18; Answer, ¶18).   Joseph

Murphy retired from the Fire Department in 2005.  (Complaint, ¶18).  Prior to serving with the

New York City Fire Department, Joseph Murphy was a New York City Police Officer.

(Complaint, ¶18; Answer, ¶18).

2.    The Defendants, Stuart and Doreen Snyder, are Joseph Murphy's brother-in-

law and sister, respectively.  (*Murphy Aff.*, ¶3; Complaint, ¶3; Answer, ¶3).  The Plaintiffs and

the Defendants previously had a very close relationship.   (*See* Complaint, ¶19; Answer, ¶19).

3.    The Defendant, Stuart Snyder, has worked in the custom home building

business for more than twenty years, performing home construction, luxury home renovation,

and commercial projects.  (Complaint, ¶20; Answer, ¶20).  Stuart Snyder operates his business

through several entities and conducts business under various trade names.  (Complaint, ¶21;

Answer, ¶21).  One such business was BBSea Associates, LLC ("BBSea"), which was wholly

owned by Stuart Snyder at all relevant times.  (Complaint, ¶22; Answer, ¶22).

4.    The Defendant, Stuart Snyder, and the Plaintiff, Joseph Murphy, discussed the

Plaintiffs investing money for real estate projects located in New Jersey and Connecticut.

---

[4] The Defendants now argue that Doreen Anne Snyder is not liable to the Plaintiffs; however, the District Court has
held that both Defendants are liable to the Plaintiff.  This will not be re-litigated in the Adversary Proceeding.

(Complaint, ¶¶28, 36; Answer, ¶¶28, 36).

5.      The Plaintiffs entered into the New Jersey project (the "Haworth Property") as 'silent partners', and as sole partners with the Defendants in the Connecticut Project (the "Bible Street Property").  (August 2014 Tomlinson Report at 30).

6.      On or about December 28, 2005, the Plaintiffs wire transferred $100,000.00 from their personal bank account to a Bank of America attorney trust account in the name of Steven D. Freesman, an attorney specializing in real estate closings. (Complaint, ¶32; Answer, ¶32).

7.      On or about August 28, 2006, the Plaintiffs wire transferred $275,000.00 to a Patriot National Bank account in the name of BBSea.  (Complaint, ¶42; Answer, ¶42).

8.      The Defendants were to use the $275,000.00 wire-transferred by the Plaintiffs into the BBSea account for the purchase of the Bible Street Property located in Greenwich, Connecticut.  (*Murphy Aff.*, ¶7; Local R. 56(a)(1) Statement; Local R. 56(a)(2) Statement).

9.      The Defendant, Stuart Snyder, and the Plaintiff, Joseph Murphy, visited the Bible Street Property and discussed development ideas.  (Answer, ¶39).  The Defendant, Stuart Snyder, and the Plaintiff, Joseph Murphy, entered into the agreement to develop the Bible Street Property as partners.  (August 2014 Tomlinson Report at 24-25).

10.     The Bible Street Property was never purchased by the Defendant, Stuart Snyder, or by BBSea.  (August 2014 Tomlinson Report at 4).

11.     In response to a subpoena issued to Patriot National Bank, the Plaintiffs received, among other things, copies of bank statements from Patriot Bank for the period of August 2006 through November 2006.  (*Murphy Aff.,* ¶17; Hennessy Dec. ¶9 and Ex. 8; Local

R. 56(a)(1) Statement; Local R. 56(a)(2) Statement).

12.     The bank records and checks produced by Patriot Bank revealed the following:
(1) At the time the Plaintiffs transferred $275,000.00 into the account on August 28, 2006,
there was only $804.86 in the BBSea account; (Hennessy Dec. Ex. 8; Local R. 56(a)(1)
Statement; Local R. 56(a)(2) Statement); and (2) as of October 16, 2006, there remained only
$3,875.81 in the BBSea account.  (Hennessy Dec. Ex. 8; Local R. 56(a)(1) Statement; Local R.
56(a)(2) Statement).

13.     "[The Defendant,] Stuart [Snyder,] did spend some of [the Plaintiff,] Joseph
[Murphy's] $275,000[.00] investment on personal items", and the Defendant "used and
continued to use his business accounts at that time to pay his personal as well as his business
expenses." (Opposition at 7).

14.     Neither BBSea nor the Defendants returned any of the monies that were wire
transferred into the BBSea account by the Plaintiffs.  (Complaint, ¶59; Answer, ¶12; Local R.
56(a)(1) Statement; Local R. 56(a)(2) Statement).

15.     In 2011, the Plaintiffs commenced the District Court Action for breach of
contract, breach of fiduciary duty, and other similar claims.  (Complaint, ¶5; Answer, ¶5).

16.     In the August 2014 Tomlinson Report, Judge Tomlinson recommended that the
Defendants' answer to the complaint be stricken and that the Plaintiffs be awarded a default
judgment against the Defendants.

17.     Judge Tomlinson found that default judgment was warranted for breach of
contract; however, the August 2014 Tomlinson Report did not recommend entry of a default
judgment as to causes of action that appeared to be duplicative of the Plaintiffs' breach of

10

contract claim in the District Court Action.[5]  (August 2014 Tomlinson Report at 30).  Judge

Tomlinson found that the "Defendants breached [the] agreement by failing to purchase the

Bible Street property, and instead, used Plaintiffs' monies for other projects and purposes

without notice to or authorization by the Plaintiffs and failed to return any of the Plaintiffs'

initial investment or the promised 20% return." (*Id*. at 19).

18.    The August 2014 Tomlinson Report also concluded the following: "Here,

Plaintiffs entered into the Haworth [Property] investment contracts as 'silent partners' and as

sole partners with Defendants in the Connecticut Project.  Therefore, Defendants were

required to act in Plaintiffs' best interest with regard to their business ventures.  By refusing to

allow Plaintiffs to actively participate in the projects in which a total of $375,000[.00] was

invested, and by refusing to account for their finances, Defendants breached their fiduciary

duty to Plaintiffs and caused them to suffer monetary damages of $375,000[.00]." (*Id.* at 25).

19.    The August 2014 Tomlinson Report also concluded that the Defendants were

fiduciaries based on their relationship with the Plaintiffs: "Plaintiffs have sufficiently set forth

that a fiduciary relationship existed between Plaintiff, Joseph Murphy and his Defendant

brother-in-law Stuart Snyder and that they had a 'close relationship' with each other and

'enjoyed a relationship of trust.'" (*Id.* at 25).

20.    On September 22, 2014, District Judge Seybert entered an Order adopting the

August 2014 Tomlinson Report, and Judgment was entered stating the following: (1) that the

---

[5] A judgment was entered for the breach of contract claim only, because the breach of fiduciary duty claim was
found to be duplicative of the claim for breach of contract.  Judge Tomlinson wrote: "In the present action,
Plaintiffs' breach of fiduciary duty claim is entirely derivative of the underlying breach of contract, namely,
Defendants' failure to provide the Plaintiffs with a return of their capital in addition to a 20% return of their
investment."  (August 2014 Tomlinson Report at 26).

11

Defendants' Amended Answer be stricken; (2) that a default judgment be entered against the

Defendants; and (2) that the Plaintiffs be awarded a total of $450,000 in damages, plus

interest.

## VI.  Discussion

### A.  Summary Judgment Standard

"Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Fed. R.

Bankr. P. 7056, directs that '[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.'" *Parris v. Delaney* (*In re Delaney*), 504 B.R. 738, 746 (Bankr. D. Conn. 2014)

(internal quotation marks and alteration in original), quoting Fed. R. Civ. P. 56(a).  When

considering a motion for summary judgment, "the judge's function . . . is not to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Furthermore,

the court "cannot try issues of fact; it can only determine whether there are issues to be tried."

*Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999), (quoting *Chambers v. TRM Copy Ctrs.

Corp.*, 43 F.3d 29, 36 (2d Cir. 1994)).

At the summary judgment stage, the moving party bears the burden of showing that there

are no material facts in dispute and the court is to draw all reasonable inferences, and resolve all

ambiguities, in favor of the non-moving party.  *United Transp. Union v. Nat'l R.R. Passenger

Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has met its burden, in order to

defeat the motion, the "party opposing summary judgment . . . must set forth 'specific facts'

demonstrating that there is 'a genuine issue for trial.'" *In re Affinity Health Care, Mgmt., Inc.*,

499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.

2009)).  "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to

defeat a motion for summary judgment." *Id.* (quoting *Havey v. Homebound Mortg., Inc.*, 547

F.3d 158, 163 (2d Cir. 2008)).

### B.  The District Court Action and Collateral Estoppel

The Plaintiffs assert that the judgment in the District Court Action, which held that the

Defendants are liable to the Plaintiffs and that the Defendants breached their fiduciary duty to the

Plaintiffs, cannot be collaterally attacked or re-litigated in the Adversary Proceeding.  The

Defendants respond that collateral estoppel should not apply to a default judgment, and

therefore, collateral estoppel or issue preclusion does not apply in this case.

"It is well settled that preclusion principles apply in bankruptcy proceedings." *Evans v.*

*Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).  Furthermore, preclusion principles can apply in cases

where a default judgment has been entered in another court of competent jurisdiction.  *See, e.g.,*

*In re Swirsky*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006) (giving default judgment entered

against a Chapter 7 debtor in a state court action to recover for debtor's alleged breach of

covenant not to compete and misappropriation of trade secrets collateral estoppel effect in a

subsequent nondischargeability proceeding).  In *Swirsky,* the court held that collateral estoppel

did apply to issues on which the state court made specific findings—that the debtor had engaged

in activities prohibited by restrictive covenant and that the buyers had been damaged in amount

of $250,000.00.  *Id.*  However, the ultimate question of whether the debtor had inflicted a

"willful and malicious injury" on the buyers or engaged in conduct amounting to a fiduciary

fraud or defalcation was something that remained to be determined.  *Id.*

13

The purpose of the doctrine of collateral estoppel is to prevent re-litigation in nondischargeability proceedings of issues that were actually decided in litigation in another court. *Grogan v. Garner,* 498 U.S. 279 (1991).  In *Kelleran v. Andrijevic*, the United States Court of Appeals for Second Circuit held that a bankruptcy court was required to give preclusive effect to a default judgment entered in state court, holding that "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987).  The Second Circuit has also held that bankruptcy courts cannot reconsider the results of a litigation where the underlying court would not vacate the judgment.  *See In re James,* 940 F.2d 46, 53 (3d Cir.1991) (relying on collateral estoppel); *In re Maurice,* 21 F.3d 767, 774 (7th Cir.1994) (where the argument that *res judicata* prevented collateral attack on a state court judgment was advanced as a claim in a bankruptcy proceeding).

Although the instant case involves a default judgment entered in a federal court and not a state court, collateral estoppel principles still apply.  "As several courts have found, [when] the issues sought to be precluded were decided by a federal court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel." *FTC v. Wright* (*In re Wright*), 187 B.R. 826, 832 (Bankr. D. Conn. 1995).

> Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Guggenheim Capital, LLC v. Birnbaum* (*In re Birnbaum*), 513 B.R. 788, 801 (Bankr. E.D.N.Y. 2014).

14

In this case, the Plaintiffs have demonstrated that "the identical issue was raised in a previous proceeding" and that "the issue was actually litigated and decided" in the District Court Action.  In the District Court Action, Judge Tomlinson found that a default judgment was warranted due to the Defendants' breach of contract.  (August 2014 Tomlinson Report at 30).  "Defendants breached [the] agreement by failing to purchase the Bible Street property, and instead, used Plaintiffs' monies for other projects and purposes without notice to or authorization by the Plaintiffs and failed to return any of the Plaintiffs' initial investment or the promised 20% return." (*Id.* at 19).

Additionally, Judge Tomlinson found:

> Plaintiffs entered into the Haworth Project investment contracts as "silent partners" and as the sole partner with Defendants in the Connecticut Project. Therefore, the Defendants were required to act in Plaintiffs' best interest with regard to their business ventures. By refusing to allow Plaintiffs to actively participate in the projects in which a total of $375,000 was invested, and by refusing to account for their finances, Defendants breached their fiduciary duty to Plaintiffs and caused them to suffer monetary damages of $375,000.

(August 2014 Tomlinson Report at 25).

Further, the August 2014 Tomlinson Report also held that the Defendants were fiduciaries based on their relationship with the Plaintiffs: "Plaintiffs have sufficiently set forth that a fiduciary relationship existed between Plaintiff, Joseph Murphy and his Defendant brother-in-law Stuart Snyder and that they had a 'close relationship' with each other and 'enjoyed a relationship of trust.'" (*Id.* at 25).   These issues are entirely duplicative of the issues currently before this Court.

The Plaintiffs have also demonstrated that the Defendants had a full and fair opportunity to litigate the same issues asserted in the Complaint.  "An issue has been fully and fairly litigated

15

if the party against whom collateral estoppel is asserted had a 'full and fair opportunity' to litigate that issue in the prior proceeding ....  An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Book v. Mortg. Elec. Registration Sys.*, 608 F. Supp. 2d 277, 287 (D. Conn. 2009).  The record in the District Court establishes that the Defendants had ample opportunity to defend and litigate the issue in the District Court Action.

Finally, the Plaintiffs have demonstrated that the resolution of the issues asserted in the Complaint was necessary to support a valid and final judgment on the merits in the District Court Action.  The issues on which the District Court made specific findings, i.e., that both the Defendants are liable, that the Defendants breached their contract with the Plaintiffs, that damages should be awarded to the Plaintiffs in the amount of $450,000.00, plus interest and costs, and that the Plaintiffs and Defendants were fiduciaries under New York law[6], will be given collateral estoppel effect.

### C.  Burden of Proof and Effect of Collateral Estoppel on the Complaint

While the Bankruptcy Code provides a debtor with a "fresh start," this unencumbered new beginning is reserved for the "honest but unfortunate debtor."  *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991), *citing Local Loan Co. v. Hunt,* 292 U.S. 234 (1934).  The statutes governing nondischargeability of debts reflect a congressional decision to "exclude from the general

---

[6] The Defendants argue that the District Court erred in applying New York law when rendering its decision, and instead should have applied the law of the state of New Jersey.  This argument could have been advanced in the District Court.  Regardless, under New Jersey law "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position."  *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997).

policy of discharge certain categories of debt." *Id.* at 287.  In *Grogan,* the Supreme Court

established that in order for a plaintiff to prevail in a nondischargeability action, the plaintiff's

claims must be proven by a preponderance of the evidence. *Id.*

### 1.  Count Two: Fiduciary Defalcation-11 U.S.C. Section 523(a)(4)

To prevail on a claim of fiduciary defalcation under Section 523(a)(4), two elements must

be proven: (i) the existence of a fiduciary relationship between the plaintiff and the defendant,

and (ii) a defalcation committed by the defendant in the course of that relationship.  *In re Nofer*,

514 B.R. 346 (Bankr. E.D.N.Y. 2014); *accord In re Yoshida*, 435 B.R. 102, 108 (Bankr.

E.D.N.Y. 2010); *In re McDermott*, 434 B.R. 271, 280 (Bankr. N.D.N.Y. 2010), *aff'd sub nom.*

*Econ. Dev. Growth Enterprises Corp. v. McDermott*, 478 B.R. 123 (N.D.N.Y. 2012).

### i.  Fiduciary Capacity

Under Section 523(a)(4), the issue "of whether a defalcation has occurred is reached only

when the threshold determination that the debtor acted in a fiduciary capacity has been made."

*Nofer*, 514 B.R. at 353 (*quoting Andy Warhol Found. for the Visual Arts, Inc. v. Hayes* (*In re*

*Hayes),* 183 F.3d 162, 170 (2d Cir. 1999)).  The Bankruptcy Code does not define the term

"fiduciary" for purposes of Section 523(a)(4).  *Yankowitz Law Firm v. Tashlitsky* (*In re*

*Tashlitsky*), 492 B.R. 640, 644 (Bankr. E.D.N.Y. 2013) (*citing In re Hayes*, 183 F.3d at 167).

The precise scope of the term is a matter of federal law, although "its application frequently turns

upon obligations attendant to relationships governed by state law."  *In re Hall*, 483 B.R. 281, 292

(Bankr. D. Conn. 2012), (*quoting In re Hayes*, 183 F.3d at 166).   "What constitutes a fiduciary

relationship under [state] law is a separate issue from what constitutes a 'fiduciary' within the

purview of Section 523(a)(4) of the Bankruptcy Code", and not all state law fiduciaries also meet the definition of that term for purposes of Section 523(a)(4).  *Id.*

In this case, a finding that a fiduciary relationship existed was made by Judge Tomlinson. The August 2014 Tomlinson Report found that the Defendants were fiduciaries based on their relationship with the Plaintiffs: "Plaintiffs have sufficiently set forth that a fiduciary relationship existed between Plaintiff, Joseph Murphy, and his Defendant brother-in-law Stuart Snyder and that they had a 'close relationship' with each other and 'enjoyed a relationship of trust.'" (August 2014 Tomlinson Report at 25).

The August 2014 Tomlinson Report also found that the Plaintiffs had entered into two investment agreements with the Defendants, and that the parties entered into the agreements as partners.  (August 2014 Tomlinson Report at 24-25).  Additionally, the Tomlinson Report cited several cases for the proposition that partners and joint venturers are bound by a fiduciary duty to act in each other's best interests.  (August 2014 Tomlinson Report at 24) (*citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972-73 (2d Cir. 1989) (discussing fiduciary duty of partners under New York law); *Pace v. Perk*,  440 N.Y.S.2d 710, 716 (2d Dep't 1981) ("[Partners] owe a duty of exercising the utmost good faith, fairness and loyalty to their copartners."); *Indep. Asset Mgmt. LLC v. Zanger*, No. 07 Civ. 6431, 2008 WL 2477455, at *2 (S.D.N.Y. 2008) ("As a matter of New York law, joint venturers owe each other a fiduciary duty")).  In fact, it has been held "[i]n this Circuit, that a partner is a fiduciary in New York for purposes of 523(a)(4) is now settled law."  *Walters v. Sawyer* (*In re Sawyer*), 130 B.R. 384, 397 (Bankr. E.D.N.Y. 1991).

18

Therefore, under the particular circumstances of this case and applicable law, the

Defendants acted in a fiduciary capacity and had a fiduciary duty to the Plaintiffs.

### ii. Defalcation

"Defalcation" under Section 523(a)(4) is generally defined as "a failure to produce funds

entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud,

embezzlement or misappropriation." *In re Hall*, 483 B.R. at 294. The Supreme Court recently

clarified that defalcation involves a "culpable" mental state, comprising either knowledge or

gross recklessness regarding the improper nature of the relevant fiduciary conduct. *Bullock v.

BankChampaign, N.A.*, 133 S. Ct. 1754, 1757, 185 L. Ed. 2d 922 (2013). Specifically, the

Supreme Court explained that:

> where the conduct at issue does not involve bad faith, moral
> turpitude, or other immoral conduct, the term requires an intentional
> wrong. We include as intentional not only conduct that the
> fiduciary knows is improper but also reckless conduct of the kind
> that the criminal law often treats as the equivalent. Thus ... [w]here
> actual knowledge of wrongdoing is lacking, we consider conduct as
> equivalent if the fiduciary consciously disregards (or is willfully
> blind to) a substantial and unjustifiable risk that his conduct will turn
> out to violate a fiduciary duty. That risk must be of such a nature
> and degree that, considering the nature and purpose of the actor's
> conduct and the circumstances known to him, its disregard involves
> *a gross deviation* from the standard of conduct that a law-abiding
> person would observe in the actor's situation.

*Id.* at 1759-60 (internal quotation marks omitted; emphasis in original).

The Court finds that there is sufficient evidence to find a defalcation, including the gross

recklessness that such a finding requires. In the case of *In re Shao Ke*, the court found a Section

523(a)(4) defalcation and noted that the ruling was "predicated both on the evidence presented

and Debtor's lack of credibility." *Shao Ke v. Jianrong Wang*, 5:13-CV-1203-GTS, 2014 WL 4626329 (N.D.N.Y. Sept. 15, 2014). The same conclusion is reached in the case at hand.

The Defendants admitted their reckless behavior in pleadings by stating: "[Defendant] Stuart did spend some of [Plaintiff] Joseph's $275,000.00 investment on personal items", and the Defendant "used and continued to use his business accounts at that time to pay his personal as well as his business expenses." (Opposition at 7). The evidence presented established that the Plaintiffs were induced to invest with the Defendants in part by the Defendants' representations that the monies wire transferred to the Defendants would be used to purchase the Bible Street Property. (*Murphy Aff.*, ¶¶7-9; Complaint, ¶¶39-41). Yet, the record confirms that the Bible Street Property was never purchased, and the money was never returned to the Plaintiffs. (August 2014 Tomlinson Report at 4). In addition, the bank statements submitted as evidence confirm that the Defendants used the monies for personal expenses and other expenses immediately after the Plaintiffs transferred the monies to them. (Local R. 56(a)(1) Statement; Local R. 56(a)(2) Statement). The bank records also confirm that substantially all of the $275,000.00 transferred to the Defendants on August 28, 2006, was spent by October 16, 2006. (Local R. 56(a)(1) Statement; Local R. 56(a)(2) Statement).

The District Court did not find a breach of fiduciary duty against the Defendants because it was duplicative of the Plaintiffs' breach of contract damages. However, after reviewing the August 2014 Tomlinson Report, the submissions of the parties, and concluding that a fiduciary relationship existed between the Plaintiffs and the Defendants, this Court also concludes that a defalcation was committed by the defendants in the course of that relationship. Given the circumstances discussed above and the controlling case law, both elements of fiduciary

20

defalcation for purposes of Section 523(a)(4) have been proven.  Therefore, the debt owed to the

Plaintiffs by the Defendants is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).  *See Grogan*

*v. Garner*, 498 U.S. 279 (1991); *In re Lyon*, 348 B.R. 9, 24 (Bankr. D. Conn. 2006).  A judgment

of nondischargeability of debt pursuant to 11 U.S.C. §523(a)(4)  will enter in favor of the

Plaintiffs on Count Two of the Complaint.

**2.  Count Two: Embezzlement- 11 U.S.C. Section 523(a)(4)**

The Court also finds that the underlying debt was obtained by embezzlement.   *See* 11

U.S.C. § 523(a)(4);  *Grogan v. Garner,* 498 U.S. 279 (1991);  *In re  Lyon,* 348 B.R. 9, 24

(Bankr. D. Conn. 2006).  "Embezzlement" for the purposes of Section 523(a)(4) is defined by

reference to federal common law, *see In re Miano,* 265 B.R. 352, 356 (Bankr. D. Conn.

2001), as "the fraudulent appropriation of property by a person to whom such property has

been entrusted, or into whose hands it has lawfully come."  *In re Rivera,* 217 B.R. 379, 385

(Bankr. D. Conn. 1998).  Embezzlement "consists of three elements: (1) the debtor rightfully

possessed another's property; (2) the debtor appropriated the property for use other than the use

for which the property was entrusted; and (3) the circumstances implied a fraudulent intent."  *In*

*re Dybowski,* No. 07-21152, 2012 WL 1945503, at *14 (Bankr. D. Conn. May 30, 2012)

(internal quotation marks omitted).  A court may determine fraudulent intent from the facts  and

circumstances surrounding the act.  *In re Lyon*, 348 B.R. at 24.  Further, embezzlement does not

require the debtor to be acting in a fiduciary capacity.  *Id.*

The  record  established  that:  (i)  on  or  about  December  28,  2005,  the  Plaintiffs  wire

transferred to the Defendants $100,000.00; (Complaint, ¶32; Answer, ¶32); and (ii) on or about

August 28, 2006, Plaintiffs wire transferred $275,000.00 to a Patriot National Bank account in

the name of BBSea.  (Complaint, ¶42; Answer, ¶42).  Therefore, the first element of a Section 523(a)(4) embezzlement claim has been proven.

The Court finds that the second element of a Section 523(a)(4) embezzlement claim, that the debtor "appropriated the property for use other than the use for which the property was entrusted", has also been established.  *Dybowski,* 2012 WL 1945503.  The Defendant, Stuart Snyder, discussed with the Plaintiff, Joseph Murphy, investing funds with the Defendants for a project located in Connecticut.  (Complaint, ¶36; Answer, ¶36).  The Plaintiffs' monies were to be used for the purchase of the Bible Street Property.   (*Murphy Aff.*, ¶7; Local R. 56(a)(1) Statement; Local R. 56(a)(2) Statement*).*   The Defendant Stuart Snyder and the Plaintiff Joseph Murphy visited the Bible Street Property and discussed development ideas.  (Answer, ¶39).   The Bible Street Property was never purchased, nor were the monies wire transferred to the Defendants ever returned to the Plaintiffs. (August 2014 Tomlinson Report at 4).

Finally, the third element of an embezzlement claim, that the circumstances imply a fraudulent intent, was established by the Defendants' own admission.  "[Defendant] Stuart did spend some of [Plaintiff] Joseph's $275,000 investment on personal items", and the Defendant "used and continued to use his business accounts at that time to pay his personal as well as his business expenses."  (Opposition at 7).

Given the facts of this case and applicable law, all elements of embezzlement for purposes of Section 523(a)(4) have been proven.  A judgment of nondischargeability of debt pursuant to 11 U.S.C. §523(a)(4)(a) will enter in favor of the Plaintiffs on Count Two of the Complaint.

### 3.   Count Three: Willful Injury to Property- 11 U.S.C. Section 523(a)(6)

Count Three of the Complaint alleges a nondischargeability claim under Section

523(a)(6).  Under Section 523(a)(6), a debt will be nondischargeable if obtained by "willful and

malicious injury by the debtor to another entity or to the property of another entity."   Generally,

a breach of contract unaccompanied by tortious conduct does not give rise to a Section 523(a)(6)

nondischargeability claim.  *In re Marcella*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011); *accord In

re Radcliffe*, 317 B.R. 581, 589 (Bankr. D. Conn. 2004) (plaintiff must provide evidence of

"deliberate injury, conversion or other tortious conduct by the defendant" beyond a mere

knowing breach of contract).

Section 523(a)(6) further requires that the injury giving rise to the debt be both "willful"

and "malicious."  *In re Delaney*, 504 B.R. 738, 749 (Bankr. D. Conn. 2014).  The "willfulness"

element requires that a plaintiff prove "a deliberate and intentional injury, not merely a deliberate

or intentional act that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Next, the

"maliciousness" element requires that a plaintiff further prove that said injury was "wrongful and

without just cause or excuse, even in the absence of personal hatred, spite or ill-will."  *In re

Stelluti*, 94 F3d 84, 88 (2d Cir. 1996) (an example: the withdrawal of money from joint bank

accounts in anticipation of divorce).  Maliciousness will be found where the "debtor has

breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of

acting with deliberate intent, in circumstances where it is evident that the conduct will cause

injury to the plaintiff and under some aggravating circumstance to warrant denial of discharge."

*In re Hambley*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005).

In the District Court Action, Judge Tomlinson found that the Defendants breached the

contract with the Plaintiffs.  (August 2014 Tomlinson Report at 25).  Defendant Stuart Snyder

discussed with Plaintiff Joseph Murphy investing monies with the Defendants in a project

located in Connecticut.  (Complaint, ¶36; Answer, ¶36).  The investment was to be used for

the purchase of the Bible Street Property.   (*Murphy Aff.*, ¶7; Local R. 56(a)(1) Statement;

Local R. 56(a)(2) Statement).   The Bible Street Property was never purchased, nor were the

monies wire transferred to the Defendants ever returned to the Plaintiffs.  (August 2014

Tomlinson Report at 4).

 The record establishes that the Defendants committed a willful or malicious act.  Judge

Tomlinson found: "Plaintiffs entered into the Haworth Project investment contracts as 'silent

partners' and as the sole partner with Defendants in the Connecticut Project.  Therefore, the

Defendants were required to act in Plaintiffs' best interest with regard to their business

ventures." (*Id.* at 25).  Instead, the Defendants willfully used the Plaintiffs monies for personal

expenses, and "caused [Plaintiffs]  to suffer monetary damages of $375,000[.00]."  (*Id.*).

 Given the facts of this case and the controlling law, all elements of willful injury to

property for purposes of Section 523(a)(6) have been proven.  A judgment of

nondischargeability of debt pursuant to 11 U.S.C. §526(a)(6) will enter in favor of the

Plaintiffs on Count Three of the Complaint.

### 4.  Count One: False Pretenses, False Representations, or Actual Fraud- 11 U.S.C. Section 523(a)(2)(A)

 The First Count of the Complaint alleges that the Defendants deceived the Plaintiffs into

lending $375,000.00 to the Defendants for investment purposes.  Section 523(a)(2)(A) provides

that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" will

be deemed nondischargeable "to the extent obtained by . . . false pretenses, a false representation,

24

or actual fraud".  The Section 523(a)(2)(A) analysis based on fraud requires that the creditor

prove, by a preponderance of the evidence, that:

> (1) the debtor made the representations; (2) at the time he knew they were
> false; (3) he made them with the intention and purpose of deceiving the
> creditor; (4) the creditor relied on such representations; and (5) the creditor
> sustained the alleged loss and damage as the proximate result of the
> representation having been made.

*Michalek v. Ochs* (*In re Ochs*), 516 B.R. 213, 218 (Bankr. D. Conn. 2014).  The false

representation giving rise to the debt must be knowingly and fraudulently made.  *F.D.I.C. v.*

*Roberti* (*In re Roberti*), 201 B.R. 614 (Bankr. D. Conn. 1996).  Additionally, as several courts

have observed, including this Court, the failure to honor one's promise is a breach of contract,

but making a promise that one intends not to keep is fraud.  *See, e.g.*, *Marcella v. ARP Films,*

*Inc.*, 778 F.2d 112, 119 (2d Cir.1985); *Drexel Burnham Lambert Inc. v. Saxony Heights Realty*

*Assocs.*, 777 F. Supp. 228, 235 (S.D.N.Y.1991); *accord Feenstra v. Feenstra* (*In re Feenstra*),

No. 12-31188 JAM, 2013 WL 6054749 (Bankr. D. Conn. Nov. 15, 2013).

In the August 2014 Tomlinson Report, Judge Tomlinson decided the issue of fraudulent

inducement as follows:

> The only fraud alleged in the Amended Complaint is that the
> Defendants intended not to comply with the promises in their
> agreement, namely, that Plaintiffs "would receive a twenty
> percent return on their investment." Am. Compl. ¶¶ 156-160.
> Without alleging that Defendants made misrepresentations to
> Plaintiffs which were extraneous or collateral to the agreement,
> Plaintiffs cannot maintain a cause of action for fraudulent
> inducement here. *See Gutkowski v. Steinbrenner*, 680 F. Supp.2d
> 602, 614 (S.D.N.Y. 2010).  Therefore, the Court respectfully
> recommends to Judge Seybert that the Plaintiffs' motion for entry of
> default judgment on Plaintiffs' fraudulent inducement claim be
> DENIED.

(Tomlinson Report at 23-24).   At this time, the Court cannot determine that the Defendants fraudulently induced the Plaintiffs.   Therefore, summary judgment as to Count One of the Complaint is denied.

## VII.  Conclusion

In conclusion, for the reasons set forth above, the Plaintiffs' Motion for Summary Judgment is hereby **GRANTED** as to Counts Two and Three of the Complaint, and **DENIED** as to Count One of the Complaint.  The debt to the Plaintiffs in the amount of $450,000.00, plus interest and costs, is **NONDISCHARGABLE** pursuant to 11 U.S.C. Sections 523(a)(4) and (a)(6).

A telephonic pretrial conference will be held at 12:30 p.m. on June 6, 2017, at the United States Bankruptcy Court, Bridgeport Division, 915 Lafayette Blvd., Bridgeport, Connecticut 06604.

DATED:   ___May 5, 2017___

*Julie A. Manning*
*Chief United States Bankruptcy Judge*
*District of Connecticut*

26